**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

----------------------------------------------------

RAFAEL QUEZADA,

                Petitioner,

    -against-

MICHAEL CAPRA, Superintendent,
Sing Sing Correctional Facility,

              Respondent.

----------------------------------------------------

**REPORT & RECOMMENDATION**

**13 Civ. 8574 (VSB)(MHD)**

**TO THE HONORABLE VERNON S. BRODERICK, U.S.D.J.:**

Pro se petitioner Rafael Quezada seeks a writ of habeas corpus to challenge his May 2006 conviction in New York State Supreme Court, Bronx County. Petitioner was convicted of Manslaughter in the First Degree and was sentenced to twenty years of imprisonment and five years of post-release supervision. He is currently serving this sentence at the Sing Sing Correctional Facility.

Petitioner asserts three grounds for relief in his petition. First, he argues that his conviction was against the weight of evidence. Second, he urges that the prosecutor engaged in misconduct at trial by using inadmissible evidence and making inappropriate comments. Third, he insists that his sentence was excessive and against the interest of justice.

Respondent has moved to dismiss the petition pursuant to Federal Rule of Civil Procedure 12(b)(6), contending that Quezada failed to commence this proceeding within the period of limitations set forth in 28 U.S.C. § 2244(d)(1). For the reasons set forth below, we recommend that the motion be granted.

**Procedural History**

**A. Trial Court and Direct Appeal**

Quezada was convicted following a jury trial and was sentenced on May 1, 2006. (Pet. ¶ 2(b); Johnson Decl. ¶ 4). He appealed his conviction to the Appellate Division, First Department, on the grounds that the conviction was against the weight of the evidence, that prosecutorial misconduct had denied him a fair trial, and that his sentence was excessive. (Pet. ¶ 9). Petitioner argued that the conviction was against the weight of evidence because the prosecution had relied solely on the uncorroborated testimony of one eyewitness, Godfrey Irizarry. (Brief for Defendant-Appellant ("Def. Appeal"), Doc. 20, at 45-56). Quezada further complained that the prosecutor had referenced the witness's fear of the defendant and had made improper statements during summation. (Id. at 57-66). Lastly, he argued that because of his lack of a criminal

record and his "lesser role" in the crime, the sentence imposed was excessive. (<u>Id.</u> at 67-72).

The Appellate Division affirmed the conviction and sentence on October 15, 2009. (Pet. ¶ 9; Johnson Decl. ¶ 5). In doing so, the court rejected all of Quezada's arguments. Thus it stated that "there is no basis for disturbing the jury's credibility determinations. The People's witness consistently stated that defendant played a leading role in beating the victims to death, and the inconsistencies in [Mr. Irizarry's] testimony were insignificant." <u>People v. Quezada</u>, 66 A.D.3d 520, 520, 887 N.Y.S.2d 63, 64 (1st Dep't. 2009). Addressing the claim of prosecutorial misconduct, the court held that all but one of petitioner's complaints about the statements were unpreserved; as for the remaining, "arguably preserved," complaint, the panel rejected it based on the trial court's curative instruction. <u>Id.</u> at 520-21, 887 N.Y.S.2d at 64. Petitioner next sought leave to appeal the Appellate Division's decision. On February 17, 2010 the New York Court of Appeals denied the leave application. <u>People v. Quezada</u>, 14 N.Y.3d 772, 898 N.Y.S.2d 104 (2010).

**B. State Collateral Review**

On March 31, 2010, petitioner filed a <u>pro se</u> motion to vacate the judgment pursuant to N.Y. Crim. Proc. L. § 440.10. (Johnson Decl. ¶ 7 & Ex. 4). He asserted two claims in his motion -- that he had been denied his right to confrontation and a fair trial by the admission of hearsay statements, and that the evidence was insufficient to support his conviction because the prosecution's eyewitness had been intoxicated at the time of the incident. (Motion to Vacate Judgment ("440.10 Mot"); Johnson Dec. Ex. 4 at 1).

On August 12, 2010, Justice Seth L. Marvin denied petitioner's motion. (Johnson Decl. ¶ 8 & Ex. 8). He held that the petitioner's claims were procedurally barred under N.Y. Crim. Proc. L. § 440.10(2)(c) by virtue of his failure to raise them on his direct appeal. (<u>Id</u>., Ex. 8 at 2). Justice Marvin issued a revised order to the same effect on September 22, 2010. (<u>Id</u>., Ex. 9).[1] On December 28, 2010 the Appellate Division denied petitioner's application for

---

[1] The only change was the insertion of a footnote rejecting Quezada's argument that a 2009 Supreme Court decision represented such a change in the law as would justify his failure to invoke the hearsay argument on his direct appeal. (<u>Id</u>. Ex. 9 at 2 n.1).

leave to appeal the rejection of his section 440.10 motion. (Johnson Decl. ¶ 9 & Ex. 10).

### C. Proceedings in This Court

Petitioner filed his federal habeas petition on November 28, 2013. (Pet. at 16).[2] He asserts the same three claims as he pursued on direct appeal. (Id. ¶ 12).

In his petition, Quezada concedes that he filed after the expiration of the one-year statute of limitations mandated in 28 U.S.C. §2244(d)(1)(A). (Pet. ¶ 18, p. 16). He asks, however, that the court apply the equitable tolling principle, asserting that he does not speak or write in English, that the prison in which he is confined lacked Spanish-language legal resources, that he has only a fifth-grade education, that he lacked knowledge of the law, and that he had tried to find a Spanish-speaking translator within the prison. (Id. at 16-17).

---

[2] For purposes of establishing a date of filing, we apply the prison-mailbox rule, and thus adopt the date that appears at the signature line of the petition as the presumptive filing date. See, e.g., Houston v. Lack, 487 U.S. 266, 271-72 (1988); Hodge v. Greiner, 269 F.3d 104, 106 (2d Cir. 2001).

As noted, respondent has moved to dismiss the claim, premised on Quezada's failure to file the petition within the statute of limitations defined in 28 U.S.C. § 2244(d)(1)(A). Respondent insists that petitioner is not entitled to equitable tolling, asserting that a lack of "proficiency in English is generally not enough to justify equitable tolling of the statute of limitations." (Respondent's Memorandum of Law ("Resp. Mot."), Doc. 14, 6) (citing Cobas v. Burgess, 306 F.3d 441, 443-44 (6th Cir. 2002)). He also observes that "lack of legal training, poor education, or illiteracy [does not] provide a reason for an equitable tolling of the statutory period for filing a petition." (Id.) (citing Turner v. Johnson, 177 F.3d 390, 392 (5th Cir. 1999)). Respondent also notes that petitioner had earlier completed and filed a pro se section 440.10 motion in the trial court, thus demonstrating that he had the ability to file adequate court papers. (Id. at 6-7).

In petitioner's response to respondent's motion,[3] he largely reiterates the personal circumstances that he had mentioned in the original petition. (Petitioner's Opposition to Respondent's Motion ("Pet. Opp."), Doc. 19, 2-5). He also states that although he was

---

[3] This document was apparently prepared with the assistance of a "qualified legal assistant," petitioner's fellow inmate Richard K. Valentin. (Pet. Opp. at 3 n.1).

6

previously able to file his section 440.10 motion in state court, the "clerk" who had assisted him in that endeavor had subsequently been transferred to a different facility, where he could no longer assist Mr. Quezada. (Affidavit of Richard Valentin ("Valentin Aff."), Doc. 19, 8-9).[4] Petitioner –– in effect, speaking through his "law clerk," Mr. Valentin, a volunteer legal assistant in the Sing Sing law library (Pet. Opp. 5) –– reports that Mr. Valentin "sought out permission from the Facility Administration to assist Mr. Quezada with his legal work because the assistant understands [his] native language . . . and could explain to [him] any repercussions he could face if he does not make filings, appeals, or any other matters which takes place within the Courts." (Id. at 2-3). Mr. Quezada compares the transfer of the first law clerk to abandonment by a criminal defense attorney at trial –– "it would be like a lawyer who makes the application, and then upon the filing would resort to moving to another state, and not contacting his

---

[4] There is some confusion whether petitioner himself or the law clerk was transferred.  In his reply, petitioner states that he was transferred. (Pet. Opp. at 2, 4).  In an affidavit submitted by inmate law clerk Richard K. Valentin, however, Mr. Valentin states that the clerk was transferred. (Valentin Aff. 8). Because petitioner's legal materials –– which the first clerk had worked on –– were found at Sing Sing Correctional Facility, it can be inferred that the clerk had been at Sing Sing and was transferred from there.

client leaving him in 'limbo' mode –– knowing what not to do, when to do it, and not trusting just anyone to take over." (<u>Id</u>. at 3).

According to Mr. Valentin's affidavit, he began assisting petitioner in November 2013. (Valentin Aff. 8). Mr. Valentin attached to his affidavit a form dated February 13, 2014, in which Quezada requested and received permission from Sing Sing authorities for assistance by someone "other than a facility law clerk" –– that is, Mr. Valentin. (<u>Id</u>. at 10). According to Mr. Valentin, when the prior law clerk was transferred from the prison, he did not inform Quezada of that fact and did not return his legal materials. (Id. at 8). Mr. Valentin also stated that someone other than Mr. Quezada "informed [Valentin] of the situation, and asked [him] to help locate Mr. Quezada's legal material." (<u>Id</u>.).

## **Analysis**

Petitioner concedes that his pleading is untimely but argues for equitable tolling. We first address the timeliness question and then assess Quezada's tolling argument.

8

A. **Limitation Standards**[5]

The Antiterrorism and Effective Death Penalty Act ("AEDPA") imposes a one-year statute of limitations on the filing of habeas petitions in federal court. 28 U.S.C. § 2244(d)(1). Under its terms, the petitioner has one year from "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review" to file a petition in federal court. Id. The judgment is deemed final either when the Supreme Court denies a petition for writ of certiorari or when the time for making such an application has expired, which is a period of ninety days following completion of review by the state courts. See, e.g., Dillon v. Conway, 642 F.3d 358, 360 n.3 (2d Cir. 2011); Williams v. Artuz, 237 F.3d 147, 148-49 (2d Cir. 2001).[6]

---

[5] Respondent has styled his motion as one for dismissal under Rule 12(b)(6). Because its assessment rests on proffers outside the petition, and untimeliness may be addressed under Fed. R. Civ. P. 12(b)(1), see Bellamy v. Fischer, 2006 WL 2051038, *3 (S.D.N.Y July 24, 2006), we deem the motion to come within that rule.

[6] Section 2244(d)(1) specifies three other accrual points, none of which are applicable to this case:

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has

The statute of limitations may be tolled when a "properly filed application for state post-conviction or other collateral review with respect to the pertinent judgment or claim is pending," 28 U.S.C. § 2244(d)(2); see, e.g., Fernandez v. Artuz, 402 F.3d 111, 116 (2d Cir. 2005), but such filings do "not reset the date from which the one-year statute of limitations begins to run." Smith v. McGinnis, 208 F.3d 13, 17 (2d Cir. 2000) ("If the one-year period began anew when the state court denied collateral relief, then state prisoner's could extend or manipulate the deadline for federal habeas review by filing additional petitions in state court."). The statute of limitations begins to run again from the date on which the state court issues a final order and no further appellate review is available. See, e.g., Saunders v. Senkowski, 587 F.3d 543, 549 (2d Cir. 2009).

**B. The Timing Quezada's Petition**

Absent a collateral challenge to his conviction, petitioner's

---

been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1)(B)-(D).

statute of limitations would have began to run on May 18, 2010, which was 90 days after the New York Court of Appeals denied leave to appeal. See 28 U.S.C. §2244(d)(1)(A). See also Williams, 237 F.3d at 150-51. Petitioner, however, filed his pro se state collateral proceeding on March 31, 2010, before the limitations clock had begun to move.

Therefore, petitioner's limitations period began to run when the Appellate Division denied leave to appeal the trial court's rejection of his 440.10 motion on December 28, 2010 and no further appellate review was available. See Saunders, 587 F.3d at 549. As a result, the deadline for petitioner to file his habeas corpus petition was December 28, 2011. Petitioner failed to meet this deadline, and instead filed on November 28, 2013, nearly two years after the expiration of the statute of limitations.

## C. Equitable Tolling

Petitioner asks this court to apply the doctrine of equitable tolling on the grounds that he lacked knowledge of the law, and cannot speak, read, or write in English. We conclude that his justifications are unavailing.

**1. Tolling Criteria**

Equitable tolling is available only in "rare and exceptional circumstances." Smith, 208 F.3d at 17. The doctrine is applied narrowly to reflect "Congress's decision to impose a limitations period on petitions for habeas." Jenkins v. Green, 630 F.3d 298, 305 (2d Cir. 2010). Such tolling may not be applied simply because "a potentially meritorious claim is at stake" or "a petitioner [faced] daunting procedural obstacles." Id. Equitable tolling is available under AEDPA only if a petitioner can show: "'(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." Holland v. Florida, 560 U.S. 631, 649 (2010) (quoting Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005)). See, e.g., Jenkins, 630 F.3d at 302; Doe v. Menefee, 391 F.3d 147, 159 (2d Cir. 2004); Smith, 208 F.3d at 17.

The "petitioner seeking equitable tolling must demonstrate a causal relationship between the extraordinary circumstances on which the claim for equitable tolling rests and the lateness of the filing, a demonstration that cannot be made if the petitioner, acting with reasonable diligence, could have filed on time notwithstanding the extraordinary circumstances." Jenkins, 630 F.3d

at 303 (quoting <u>Valverde v. Stinson</u>, 224 F.3d 129, 134 (2d Cir. 2000)). The determination of whether to grant equitable tolling is done on a case-by-case basis and is not based on "rigid and nonvariable rules." <u>Dillon</u>, 642 F.3d at 362. "The burden of demonstrating the appropriateness of equitable tolling . . . lies with the plaintiff; in order to carry out this burden, she must offer a 'particularized description of how her condition adversely affected her capacity to function generally or in relationship to the pursuit of her rights.'" <u>Bolarinwa v. Williams</u>, 593 F.3d 226, 232 (2d Cir. 2010) (quoting <u>Boos v. Runyon</u>, 201 F.3d 178,185 (2d Cir. 2000)). <u>See</u> <u>also</u> <u>Smith v. Lee</u>, 2013 WL 2467988, *9 (S.D.N.Y June 7, 2013) (applying this principle to a <u>pro</u> <u>se</u> petitioner).

To determine whether a petitioner has met his burden of showing extraordinary circumstances, the "proper inquiry isn't how unusual but rather how severe an obstacle [the circumstance] is." <u>Diaz v. Kelly</u>, 515 F.3d 149, 154 (2d Cir. 2008). Circumstances that have warranted equitable tolling include confiscation by the prison of a petitioner's draft petition and all related papers, <u>see</u> <u>Valverde</u>, 224 F.3d at 135, and an attorney's "outrageous" and "egregious" conduct. <u>Dillon</u>, 642 F.3d at 363 (citing <u>Baldayaque v. United States</u>, 338 F.3d 145, 152-53 (2d Cir. 2003)).

When analyzing the "reasonable diligence" prong, the courts should ask "did the petitioner act as diligently as reasonably could have been expected under the circumstances." Baldayaque, 338 F.3d at 153 (emphasis added in original). See also Jenkins, 630 F.3d at 308. "[A] showing of reasonable efforts requires more than episodic efforts; the petitioner must demonstrate that he 'acted with reasonable diligence throughout the period he seeks to toll.'" Davis v. Lempke, 2015 WL 509671, *4 (S.D.N.Y Feb. 5, 2015) (emphasis added in original) (quoting Smith, 208 F.3d at 17).

Lack of legal knowledge, lack of education, and pro se status are insufficient circumstances to justify equitable tolling. See Smith, 208 F.3d at 18 (holding that "Smith's pro se status . . . does not merit equitable tolling."); Turner, 177 F.3d at 392 (holding that lack of legal knowledge is not sufficient to establish equitable tolling); Wilson v. Bennet, 188 F. Supp. 2d 347, 354 (S.D.N.Y. Feb. 5, 2002) (collecting cases holding that lack of legal knowledge and education are not sufficient). Inability to speak, and to write English may, in limited circumstances, justify tolling. Diaz, 515 F. 3d at 154. Nonetheless, the prisoner bears a considerable burden to justify tolling on that basis.

In observing that a lack of English proficiency may satisfy the requirement of extraordinary circumstances, the <u>Diaz</u> Court noted that "[f]or the prisoner who cannot read English, the obstacle is undoubtedly serious, just as it would be for a prisoner speaking only English incarcerated in a non-English-speaking country." <u>Id.</u> The Court also stated, however, that this is not "comparable to the obligation, grounded in the Sixth Amendment, to provide an interpreter at trial." <u>Id</u>. The prison is not obliged to provide foreign-language legal resources; rather, "the diligence requirement of equitable tolling imposes on the prisoner a substantial obligation to make all reasonable efforts to obtain assistance to mitigate his language deficiency." <u>Id</u>.

In <u>Diaz</u>, the Court held that neither of the two petitioners who invoked language difficulties had alleged efforts that satisfy the diligence requirement. <u>Id.</u> In reaching this conclusion, the Court observed that "[t]here is no allegation of any efforts to contact anyone outside the prison who might assist in making them aware, in their language, of legal requirements for filing a habeas corpus petition, nor what efforts were made to learn of such requirements within their places of confinement." <u>Id.</u> Instead, the petitioners had "claimed nothing more than the unavailability of personnel within their prisons who could translate for them during

15

the applicable limitations period." <u>Id.</u> According to the court, these assertions are insufficient to satisfy the requirement of reasonable diligence, which is needed to obtain equitable tolling. <u>Id.</u>

Following <u>Diaz</u>, lower courts have consistently stated that a lack of access to Spanish-language legal resources or a Spanish translator in the prison is insufficient to demonstrate reasonable efforts. Instead, they have invoked the holding in <u>Diaz</u> that requires a petitioner to seek assistance outside the prison. <u>See, e.g.</u>, <u>Diaz v. Lee</u>, 2013 WL 491528, *2-3 (S.D.N.Y Feb. 8, 2013); <u>Adames v. Artus</u>, 2011 WL 813627, *6-7(S.D.N.Y Jan. 20, 2011); <u>Ping v. United States</u>, 2010 WL 3257681, *3 (E.D.N.Y Aug. 13, 2010); <u>Romero v. Ercole</u>, 2009 WL 1181260, *6 (S.D.N.Y Apr. 30, 2009).

## 2. Assessment of Petitioner's Showing

Judged by these standards, Quezada's showing falls short. In substance he demonstrates (a) that he does not speak, read or write English, (b) that he was pursuing his post-appeal remedies <u>pro se</u>, (c) that in or about 2010 he had the assistance of a fellow inmate whose help allowed him to file a section 440.10 motion in state court, (d) that he filed an application in 2010 for leave to appeal

16

the denial of the section 440.10 motion, although it is unclear whether he had assistance in doing so, (e) that at some unspecified time the inmate was transferred to another facility and no one told Quezada, and (f) that in November 2013, inmate Valentin, who is bilingual, agreed to assist petitioner, and, as a result, Quezada filed his federal court petition that month. The record does not reflect any efforts by petitioner to obtain help until Valentin stepped forward to assist him nearly two years after the limitations period ended. The record is equally devoid of any evidence suggesting that Quezada had no ability to obtain assistance or translation from resources within the prison, or that -- if stymied in that respect -- he sought such help from outside the prison. Indeed, there is no indication that he did anything to pursue his federal remedies until Valentin approached him in November 2013.

As in Diaz, this set of facts is inconsistent with a showing of reasonable diligence, even if one were to assume that an inability to communicate in English was a sufficiently severe obstacle to establish an "extraordinary circumstance." See Diaz, 515 F.3d at 153. The two English-handicapped petitioners in that case were (1) "a primarily Spanish speaker" who "did not speak or read English" and (2) an individual "of Malay origin [who] speaks

a Chinese Cantonese dialect." Id. at 151, 152. Both explained their untimeliness in filing habeas petitions by reporting that it took some time to find an inmate or another person conversant with English in the prison system to assist in filing federal court papers. Id. at 152. The Diaz Court found that neither petitioner had demonstrated due diligence, noting as follows:

> Neither Diaz not Tan has alleged efforts that satisfy the due diligence requirements. Both have claimed nothing more than the unavailability of personnel within their prisons who could translate for them during the applicable limitations period. There is no allegation of any efforts to contact anyone outside the prison who might assist in making them aware, in their language, of legal requirements for filing a habeas corpus petition, nor what efforts were made to learn of such requirements within their places of confinement. Equitable tolling was properly rejected in their cases.

Id. at 154.

Here, where the petitioner alleges only in vague terms that he was unable "to find, locate a knowledgeable person to assist him with his legal problems" or to find his legal materials, the Diaz holding soundly applies. (Pet. Opp. 4; Valentin Aff. 8). As in Diaz, he includes no details as to what efforts he made between 2010 and November 2013 to obtain assistance or to locate his paperwork. Indeed, it was someone other than petitioner who finally solicited Mr. Valentin to help Quezada. (Id., Ex. 1 at 8).

18

Although petitioner suggests in vague terms that he made efforts to locate assistance within the prison, he has not indicated the length of time between the transfer of the first legal assistant and the appointment of Mr. Valentin as his current legal assistant, nor has he proffered facts to suggest that he made diligent efforts following the departure of the first legal assistant. There is also nothing to suggest that he made efforts to locate assistance outside of the prison, nor did he identify any circumstances that would make such efforts unfeasible. See Diaz, 515 F.3d at 154. See also Ping, 2010 WL 3257681, at *3; Ercole, 2009 WL 1181260, at *6; Adames, 2011 WL 813627, at *6-7. He also apparently failed to avail himself of external support services available to Sing Sing prisoners. See Lee, 2013 WL 491528, at *2 (noting that a petitioner's failure to attempt to gain access to legal services, including Spanish language assistance, from Prisoner's Legal Services of New York was evidence of a lack of diligence).[7]

In sum, petitioner has not demonstrated reasonable diligence

---

[7] Prisoner's Legal Services of New York is a non-profit organization that provides civil legal services to inmates, including those incarcerated at Sing Sing Correctional Facility. Prisoner's Legal Services of N.Y., http://plsny.org (last visited March 24, 2015)(A list of prisons served by the organization can be found on the "Contact" link and then selecting "No" to the question "[i]s your inquiry related to a criminal case (including conviction challenges)?").

in overcoming exceptional circumstances and has, therefore, not justified equitable tolling.[8]

## Conclusion

For the reasons stated, we recommend that respondent's motion to dismiss be granted. We further recommend that no certificate of appealability be issued as petitioner has failed to raise an issue that merits appellate review pursuant to 28 U.S.C. § 2253. See Flemming v. New York, 2013 WL 4831197, *14-15 (S.D.N.Y. Sept. 10, 2013)("To warrant the issuance of a certificate of appealability, 'petitioner must show that reasonable jurists could debate whether . . . the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement

---

[8] Since petitioner is pro se, we note another exception to the time-bar that is at least theoretically available to him. The Supreme Court recently held that a petitioner who demonstrated "actual innocence" may thereby have his underlying habeas claims addressed even if he failed to assert them in a timely fashion. McQuiggin v. Perkins, 133 S. Ct. 1924, 1928, 1931-34 (2013); accord Rivas v. Fischer, 687 F.3d 514, 543 (2d Cir. 2012). To satisfy this test, however, the petition must make a showing of "new evidence" that is "reliable" and "compelling". Rivas, 687 F.3d at 541, 548. See Schlup v. Delo, 513 U.S. 298, 324 (1995). As the Supreme Court cautioned, "tenable actual-innocence gateway pleas are rare: '[A] petition does not meet the threshold requirement unless he persuades the district court that, in light of new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt.'" McQuiggin, 133 S. Ct. at 1928 (quoting Schlup, 513 U.S. at 329). Quezada does not even attempt such a showing here.

to proceed further.'")(quoting <u>Middleton v. Attorneys Gen.</u>, 396 F.3d 207, 209 (2d Cir. 2005)(per curiam)).

Pursuant to Rule 72 of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from this date to file written objections to this Report and Recommendation. Such objections shall be filed with the Clerk of the Court and served on all adversaries, with extra copies to be delivered to the chambers of the Honorable Vernon S. Broderick, Room 415, 40 Foley Square, New York, NY 10007, and to the chambers of the undersigned, Room 1670, 500 Pearl Street, Room 1670, New York, New York, 10007. Failure to file timely objections may constitute a waiver of those objections both in the District Court and on later appeal to the United States Court of Appeals. <u>See Thomas v. Arn</u>, 474 U.S. 140, 150 (1985), reh'q denied, 474 U.S. 1111 (1986); <u>Small v. Sec'y of Health and Human Services</u>, 892 F.2d 15, 16 (2d Cir. 1989); 28 U.S.C. § 636(b)(1); Fed.R.Civ.P.72, 6(a), 6(d).

**Dated:  New York, New York
        March 24, 2015**

                                        **RESPECTFULLY SUBMITTED,**

                                        _____
                                        **MICHAEL H. DOLINGER
                                        UNITED STATES MAGISTRATE JUDGE**

Copies of the foregoing Report and Recommendation have been
mailed this day to:

Rafael Quezada
DIN: 06-A-2673
Sing Sing Correctional Facility
354 Hunter Street
Ossining, New York 10562

David P. Johnson
Assistant District Attorney
Bronx County
198 East 161st Street
Bronx, New York 10451